22CA1921 Peo v Bloom 11-21-2024 
 
COLORADO COURT OF APPEALS 
 
 
Court of Appeals No. 22CA1921 
El Paso County District Court No. 21CR1788 

Honorable Erin Sokol, Judge 
 
 
The People of the State of Colorado, 
 
Plaintiff-Appellee, 
 
v. 
 
David Laird Bloom, 
 
Defendant-Appellant. 
 
 
ORDER AFFIRMED 
 
Division II 
Opinion by JUDGE JOHNSON 
Fox and Schock, JJ., concur 
 
NOT PUBLISHED PURSUANT TO C.A.R. 35(e) 
Announced November 21, 2024 
 
 
Philip J. Weiser, Attorney General, Emmy A. Langley, Senior Assistant Attorney 
General, Denver, Colorado, for Plaintiff-Appellee 
 
William Holzer, Alternate Defense Counsel, Littleton, Colorado, for Defendant-

Appellant

1 
Â¶ 1 Defendant, David Laird Bloom (Bloom), appeals the district 

courtâs order denying his motion to withdraw his guilty pleas. On 

appeal, Bloom contends the district court erred because (1) it 
should have appointed him conflict-free counsel and (2) he did not 
waive his right to counsel and had to represent himself. We reject 
his contentions and, therefore, affirm the order. 
I. Background 

Â¶ 2 In April 2021, Bloom was charged in El Paso County District 

Court Case No. 21CR1788 with two counts of first degree murder of 
R.B., two counts of attempted first degree murder of K.R., two 
counts of first degree assault on K.R., two counts of attempted first 
degree murder of D.P., two counts of first degree assault on D.P., 
one count of attempted first degree assault on E.D., one count of 
possession of a weapon by a previous offender, twenty-one crime of 
violence sentence enhancers, and three habitual criminal counts.

1

 
 

1

 We take judicial notice of Bloomâs separate but related appeal in 

this court, Case No. 22CA1920, which includes the district court 
record for El Paso District Court Case No. 20CR6100. See People v. 

Saâra, 117 P.3d 51, 56 (Colo. App. 2004) (âA court may take judicial 

notice of the contents of court records in a related proceeding.â). 

2 
Â¶ 3 Approximately five months earlier, in November 2020, Bloom 

had been charged in El Paso County District Court Case No. 
20CR6100 with one count of first degree murder of T.B., two counts 
of first degree assault on N.S., and three habitual criminal counts. 
Â¶ 4 In August 2021, Bloom filed a motion in both cases alleging a 

conflict with his public defenders. Bloom argued that the conflict 
was due to his counsel not meeting with him so that they could 
review discovery. Bloom withdrew the motion at a September 15, 
2021, hearing after the district court instructed defense counsel to 
meet with Bloom and review discovery. 
Â¶ 5 On January 28, 2022, Bloom entered into plea agreements in 

both cases. In Case No. 20CR6100, Bloom pled guilty to one count 
of second degree murder of T.B. and one crime of violence sentence 
enhancer. In Case No. 21CR1788, Bloom pled guilty to one count 
of second degree murder of R.C. and one crime of violence sentence 
enhancer. Related to both plea agreements, Bloom agreed that 
charges filed against him in El Paso County District Court Case 
Nos. 20CR5736 and 20CR5727 would be dismissed (but subject to 
restitution, if any). And he agreed that his sentences for Case Nos. 
20CR6100 and 21CR1788 could each range between thirty to forty 

3 
years and that they would run consecutively, which would 
âfunctionally result in a potential total sentence of 60 to 80 years in 

the Department of Corrections when considering both cases.â 
Â¶ 6 On May 23, 2022, Bloom filed in both cases a pro se motion to 

withdraw his guilty pleas before sentencing under Crim. P. 35(c) on 
the ground that his counsel were ineffective.

2

 He requested new 
counsel. 
Â¶ 7 The court held a hearing on May 25, 2022, to address both 

motions. Bloomâs defense counsel were present. The court allowed 

Bloom to read into the record a reply that he had filed before the 
hearing. The court then addressed Bloomâs argument that defense 
counsel had not visited him to review discovery. The court 
confirmed with both Bloom and defense counsel that at the 
September 15 hearing, Bloom had withdrawn the conflict motion.

3

 

 

2

 Although Bloom filed his motion under Crim. P. 35(c), his counsel 
on appeal acknowledges that Bloomâs request was governed by 
Crim. P. 32(d). 

3

 The September 15, 2021, transcript is not included in the record. 
But there is no doubt that Bloom confirmed at the May 25, 2022, 
hearing that he withdrew his August 2021 motion at the September 
hearing. 

4 
Â¶ 8 Defense counsel, however, declined to substantively address 

Bloomâs request to withdraw his guilty pleas, as Bloom had raised 

ineffective assistance of counsel and conflict issues. But the court 
declined to appoint new counsel because it determined that Bloomâs 
allegations were either refuted by the record or conclusory, and, 
therefore, he had failed to prove his counsel had been ineffective or 
that his pleas had not been entered knowingly, voluntarily, and 
intelligently. 

Â¶ 9 After denying Bloomâs request to withdraw his guilty pleas, the 

court asked defense counsel whether they believed any conflict 
existed requiring a hearing under People v. Bergerud, 223 P.3d 686 
(Colo. 2010), before moving forward to sentencing. Defense counsel 
did not believe any conflict existed. 

Â¶ 10 On June 13, 2022, the court held a sentencing hearing in both 

cases; Bloom was sentenced to two separate forty-year terms in the 
custody of the Department of Corrections with his sentence in Case 
No. 20CR6100 running consecutively to his sentence in Case No. 
21CR1788, for a total sentence of eighty years. 

5 
II. Standard of Review and Applicable Law 

Â¶ 11 We review a courtâs denial of a motion to withdraw a guilty 

plea for an abuse of discretion. People v. Lopez, 12 P.3d 869, 871 
(Colo. App. 2000). A court abuses its discretion when its decision is 
manifestly arbitrary, unreasonable, or unfair, or when it applies an 
incorrect legal standard. People v. Rodriguez, 2022 COA 98, Â¶ 12. 
Â¶ 12 Crim. P. 32(d) authorizes a defendant to file a motion to 

withdraw a guilty plea before a sentence is imposed. Kazadi v. 

People, 2012 CO 73, Â¶ 21. But a defendant is not entitled to 

withdraw a guilty plea as a matter of right. People v. Chavez, 730 
P.2d 321, 327 (Colo. 1986). Under that rule, the defendant has the 
burden to demonstrate a fair and just reason for withdrawal. 
Lopez, 12 P.3d at 871. An allegation of ineffective assistance of 

counsel âat the time a guilty plea is entered may constitute a fair 

and just reason to withdraw the plea prior to sentencing.â Kazadi, 

Â¶ 21; Lopez, 12 P.3d at 871. 
Â¶ 13 The Sixth Amendment right to counsel includes the right to 

effective assistance of counsel. Strickland v. Washington, 466 U.S. 

668, 686 (1984). To prevail on an ineffective assistance of counsel 
claim, a defendant must prove by a preponderance of the evidence 

6 
that (1) defense counselâs performance was deficient and (2) 
counselâs deficient performance prejudiced the defendant. People v. 

Chalchi-Sevilla, 2019 COA 75, Â¶ 6 (citing Strickland, 466 U.S. at 

687). 

Â¶ 14 To establish deficient performance, a defendant must prove 

that counselâs performance âfell below an objective standard of 
reasonableness.â Strickland, 466 U.S. at 688. To establish 

prejudice, a defendant must prove that, but for counselâs deficient 
conduct, there is a reasonable probability that the outcome of the 
proceeding would have been different. Davis v. People, 871 P.2d 
769, 772 (Colo. 1994). Because a defendant must establish both 
prongs, a court may resolve an ineffective assistance of counsel 
claim solely on the basis that a defendant failed in either regard. 
People v. Karpierz, 165 P.3d 753, 759 (Colo. App. 2006). 

Â¶ 15 The constitutional right to effective assistance of counsel 

includes the right to conflict-free counsel. People v. Martinez, 869 

P.2d 519, 524 (Colo. 1994). The right can therefore be violated by 
ârepresentation that is intrinsically improper due to a conflict of 

interest.â People v. Castro, 657 P.2d 932, 943 (Colo. 1983). 

7 
III. Analysis 

Â¶ 16 At the May 25 hearing, relying on Lopez, 12 P.3d at 871-72, 

the court denied Bloomâs request for new appointed counsel. Even 

though Bloomâs current counsel did not take a substantive position 
or participate at the hearing, we discern no abuse of discretion. 

Similar to Lopez, Bloom did not allege a colorable claim of 
ineffective assistance of counsel entitling him to a hearing and new 
appointed counsel. 
Â¶ 17 In Lopez, the defendant requested new counsel to address his 

motion to withdraw his guilty plea because the defendant alleged 
his plea counsel was ineffective. Id. at 870. The defendant argued 
that a more lenient standard should apply when such a request is 
made in connection with a motion to withdraw a guilty plea before a 
conviction is final than when it is made in postconviction 
proceedings. Id. at 871. 

Â¶ 18 The division disagreed. Id. It determined that in the context of 

Fed. R. Crim. P. 32(d), federal courts have held a defendant is not 
entitled to a hearing on a motion to withdraw a guilty plea âif the 
defendantâs allegations [of ineffective assistance of counsel] merely 

contradict the record, are inherently incredible, or are simply 

8 
conclusory.â Lopez, 12 P.3d at 871; see also United States v. 

Wilson, 828 F. Supp. 2d 679, 688 (S.D.N.Y. 2011), affâd, 523 F. 

Appâx 30 (2d Cir. 2013); United States v. Shah, 263 F. Supp. 2d 10, 

25 (D.D.C. 2003), affâd and remanded, 453 F.3d 520 (D.C. Cir. 
2006). Without a colorable claim, the division concluded that a 

district court has discretion whether to appoint counsel related to a 
Rule 32(d) motion. 
Â¶ 19 And Bloomâs reliance on Riley v. District Court, 507 P.2d 464, 

465 (Colo. 1973), is misplaced. There, the supreme court decided 
that because the defendantâs counsel were likely ânecessary 
witnesses adverse to the interests of [the defendant] at a hearing on 
[his] motionâ there would be a conflict of interest. Id. at 466. 

Bloom contends the court in his case held a hearing, and consistent 
with Riley, counsel should have been appointed. But in our view, 
the May 25 hearing was to determine whether Bloom had alleged a 

colorable ineffective assistance of counsel claim. If the court had 
determined Bloom had raised a colorable claim necessitating an 
evidentiary hearing in which his public defenders would likely 
testify, we agree that this would present a very different situation. 
But absent a colorable ineffective assistance of counsel claim 

9 
necessitating adverse testimony from Bloomâs counsel, Riley is 

inapplicable.

4

 
Â¶ 20 As framed by Bloom, he does not appeal the courtâs conclusion 

that he did not establish a fair and just reason to set aside his 
guilty pleas. Instead, he contends that because his counsel had a 
conflict and he had established a colorable ineffective assistance of 
counsel claim, the district court should have appointed him 
conflict-free counsel. We discern no abuse of discretion on the part 
of the district court when it denied Bloom new appointed counsel 
because his allegations were either refuted by the record or 
conclusory. 
Â¶ 21 As support for his claim, Bloom contends that his defense 

counsel were ineffective because (1) they did not physically review 
discovery with him, (2) they improperly pressured his mother and 
him to enter into the plea agreement, and (3) there were 
typographical errors in the plea agreement. He also alleges that 
 

4

 Although People v. Lopez, 12 P.3d 869 (Colo. App. 2000), did not 
address a defendantâs waiver of counsel, it was not necessary for 
the court to advise Bloom about the risks of self-representation and 
obtain from him a valid waiver of counsel when he failed to allege a 
colorable claim. 

10 
because the court asked the prosecution to respond to his pro se 
motion and held a hearing, this supports a colorable claim.

5

 We 

address each of Bloomâs arguments in turn. 

Â¶ 22 First, Bloom contends that defense counsel only reviewed 

discovery with him after he filed his August 2021 motion and that 
there is nothing in the record to support that his counsel met with 
him after the September 15 hearing. We disagree. 
Â¶ 23 As to discovery, the court verified with Bloom at the May 25 

hearing that at the September 15 hearing he withdrew his August 
2021 motion alleging a conflict with his counsel. The court then 
verified whether defense counsel had met with Bloom after the 
September 15 hearing. The court asked, âWere you able, then to 
meet with [Bloom] in person?â Defense counsel responded, âI can 
remember at least two meetings in person with Mr. Bloom at 
different points . . . .â Defense counsel noted that the pandemic 

initially made in-person meetings with Bloom difficult. The court 
 

5

 We read nothing in Bloomâs opening brief that seeks to challenge 

the courtâs findings that Bloom knowingly, voluntarily, and 
intelligently entered into the plea agreements. We consider this 
issue to be abandoned on appeal. See People v. Carr, 2016 COA 
168, Â¶ 14. 

11 
followed up, asking, âBut did you have the opportunity to meet with 

him? You werenât restricted from meeting with him all that time?â 
Defense counsel responded, âNo, we were not restricted from 

meeting with him. And then, you know, the Webex also changed. It 
started off pretty rough and then got much better. So, yes, there 
have been both [in person and Webex] meetings.â 

Â¶ 24 On appeal, Bloom contends that defense counsel did not 

confirm specifically whether they responded to Bloomâs later 

requests to meet and review discovery. But Bloom does not identify 
any specific missed meetings or provide support for the assertion 
that he made additional requests to review discovery with his 
counsel. Indeed, the district court said that following the 
withdrawal of the August 2021 motion, âIf [counsel not meeting 

with Bloom] was an issue thereafter, the defendant never raised it, 
and the assertion now as a basis to withdraw his plea is conclusory. 
Itâs unsupported by the record.â And as the Attorney General 

points out, and we agree, Bloom fails the prejudice prong of 
Strickland because he does not support how his review of further 

discovery showed that he would not have entered into the plea 
agreement. People v. Sifuentes, 2017 COA 48M, Â¶ 20 (âIn the 

12 
context of a guilty plea, the prejudice prong [of the test for 
ineffective assistance of counsel] requires the defendant to âshow 
that there is a reasonable probability that, but for counselâs errors, 
he would not have pleaded guilty and would have insisted on going 
to trial.ââ) (citation omitted). 
Â¶ 25 Regardless, as the district court noted, Bloom was present at 

the preliminary hearings in both cases where the prosecution 
presented extensive evidence. And Bloom attended mediation on 
January 21, 2022 before entering into the plea agreement, which 
presumably included discussion of the prosecutionâs evidence as 

part of negotiations. 
Â¶ 26 Second, Bloom contends that defense counsel coerced him to 

enter into the plea agreement by telling his mother that he had âno 

chance of winning,â his sentences would run concurrently rather 

than consecutively, and he would be potentially eligible for a fifty 
percent reduction in his sentence. But the district court concluded 
that these allegations were conclusory or refuted by the record. 
Specifically, it pointed to Bloomâs affidavit â submitted as part of 
his motion â conceding that he gave âpermissionâ to defense 
counsel to speak to his mother. The court continued, âThere is 

13 
nothing improper about Counsel expressing concern about the 
weaknesses in defendantâs case to defendantâs mother under the 
circumstances such as these.â And the court reasoned that it was 
irrelevant whether Bloomâs mother âmisunderstoodâ the terms of 

the deal because the providency hearing supports that Bloom âdid 
understand them, and the record reveals absolutely nothing to the 
contrary.â 

Â¶ 27 The court continued that, even assuming Bloomâs mother 

thought his sentences would be concurrent, Bloomâs own affidavit 
also refutes this point. It said, âIn the defendantâs affidavit, page 7, 
the defendant, prior to entering into his plea, admits, my Public 
Defenders advised me that the two pleas would run consecutively so 
I would face 60 to 80 years in prison.â 
Â¶ 28 More significantly, though, the court addressed the timing of 

when defense counsel spoke with Bloomâs mother. In Case No. 

20CA6100, the court found that Bloom signed the plea agreement 
for Case No. 20CA6100 on January 25, 2022, four days after the 
January 21 mediation and three days before the providency hearing 
on January 28. The court acknowledged that Bloom was now 

contesting the date he signed the agreement, but it noted that 

14 
Bloomâs signature, initials, and the date were all in black ink; while 

his attorneys, who also signed on January 25, used blue ink; and 
the prosecutor, who also used blue ink, signed on January 26. 
Bloom alleged that defense counsel âcoerced his mother on the 

night before he entered into his guilty pleas,â so on January 27. 

But the court reasoned that Bloom had already decided to enter 
into the plea agreement before counselâs alleged conversation with 

his mother, âmaking that conversation even less material to 

defendantâs voluntary entry of his guilty plea[s].â 

Â¶ 29 We acknowledge that Bloom did not date the plea agreement 

under his signature in this case. Even assuming Bloom signed this 
plea agreement later than January 25, the district courtâs finding 
that defense counselâs discussion with his mother was not material 
to Bloomâs decision to enter into the plea agreement in Case No. 
20CR6100 equally applies to this case. By agreeing to the Case No. 
20CR6100 plea agreement that his sentences in both cases would 
run consecutively, Bloom cannot now claim his counsel failed to 
advise him as to either plea agreement or that he did not 
understand the terms in each. 

15 
Â¶ 30 Third, Bloom contends the typographical error in the plea 

agreement supports that counsel were ineffective. Paragraph 14(c) 
of the plea agreement originally stated that if the court found 
extraordinary aggravating circumstances, other than those 
identified in other paragraphs, Bloomâs prison term could be greater 
than the presumptive range up to double the maximum term, 
âmaking a term as long as 3 years.â But the number three was 

marked out in blue ink and replaced with a handwritten number 
forty-eight. 
Â¶ 31 At the May 25 hearing, the court highlighted that it noticed 

this typographical error at the providency hearing. And the court 
further indicated that defense counsel confirmed at the providency 
hearing that they had advised Bloom the possible maximum 
sentence was forty-eight, not three, years. This was followed up 
with the court at the May 25 hearing reading from the providency 
hearing transcript: 
THE COURT: Sir, because you are agreeing 
that this is a crime of violence, your plea is a 
mandatory 16-to 48-year range for the 
Department of Corrections. Do you 
understand that? 
THE DEFENDANT: Yes. 

16 
THE COURT: Okay. And you understood that 
thereâs a typographical error in this section of 

the plea paperwork that says three years. 
Actually, for extraordinary aggravating 
circumstances, your sentence can be as long 
as 48 years. Do you understand that? 
THE DEFENDANT: Yes. 
THE COURT: And do you understand that Iâm 

making the change in the plea paperwork as 
well? 
THE DEFENDANT: Yes. 
The court further read from the providency hearing transcript, 
confirming Bloom understood the counterpart term in the plea 
agreement in Case No. 20CR6100 was also corrected to forty-eight 
years. Based on the providency hearing transcript, Bloomâs reliance 

on the typographical error cannot be the basis for an ineffective 
assistance of counsel claim. 
Â¶ 32 Finally, Bloom argues that his claim is colorable because the 

court required the prosecution to file a response to his motion. But 
Crim. P. 32(d) does not delineate specific procedures for the court to 
follow when deciding such a motion. It simply states that â[a] 

motion to withdraw a plea of guilty or of nolo contendere may be 
made only before sentence is imposed or imposition of sentence is 
suspended.â In contrast, Crim. P. 35(c)(3)(V) states that if the court 

17 
does not summarily deny the motion, âthe court shall cause a 

complete copy of said motion to be served on the prosecuting 
attorney if one has not yet been served by counsel for the 
defendantâ and â[i]f the defendant has requested counsel be 

appointed in the motion, the court shall cause a complete copy of 
said motion to be served on the Public Defender.â See People v. 

Higgins, 2017 COA 57, Â¶5. But these provisions in Crim. P. 35 

apply only to motions based on âone or more of the grounds 

enumerated in section (c)(2) of this Rule,â referring to Rule 35. 

Crim. P. 35(c)(3) (emphasis added). Thus, to the extent the court 
orders a prosecutor to respond to a Rule 32(d) motion, the 
appointment of counsel provision in Rule 35(c)(3)(V) does not apply 
to relief requested under Rule 32(d). See People in Interest of 

M.K.D.A.L., 2014 COA 148, Â¶ 5. 

IV. Conclusion 

Â¶ 33 The order is affirmed. 

JUDGE FOX and JUDGE SCHOCK concur.